IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID CABELLO, : | |
|     Plaintiff : | |
| : | CIVIL NO. 1:10-CV-700 |
| v. : | |
| : | (Judge Caldwell) |
| OFFICER LOOP, : | |
|     Defendant : | |

*M E M O R A N D U M*

I.   *Introduction*

David Cabello, an individual formally confined at the Huntingdon State Correctional Institution (SCI-Huntingdon), in Huntingdon, Pennsylvania,[1] filed this civil rights action pursuant to 42 U.S.C. § 1983 claiming that Correctional Officer (CO) Loop issued him two false misconducts reports in retaliation for filing institutional grievances and lawsuits.  (Doc. 1, Compl.)

Defendant Loop has filed a Motion for Summary Judgment, arguing that the retaliation claim lacks merit because: (1) Cabello has not shown the requisite causal connection between his filing of grievances and lawsuits and the two misconducts and (2) Defendant issued the misconducts for legitimate non-retaliatory reasons.

Defendant has filed a statement of undisputed material facts, a brief and exhibits in support of his motion.  (*See* Docs. 23, 24 and 25).  Cabello has neither responded to the motion nor sought an enlargement of time to do so.

For the reasons that follow, defendant's unopposed motion will be granted.

---

[1]  Mr. Cabello was released from SCI-Huntingdon in June of 2010 and presently resides in Levittown, Pa. (Doc. 12, Change of Address).

II.     *Standard of Review*

Under Fed. R. Civ. P. 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In pertinent part, parties moving for, or opposing, summary judgment must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). In deciding a motion for summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "'The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Meditz v. City of Newark,* 658 F.3d 364, 369 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

III.    *Undisputed Facts*

The record evidence, viewed in the light most favorable to the non-moving party, reveals the following undisputed facts relevant to the disposition of the instant motion.[2]

---

[2] All material facts set forth in defendant's Statement of Material Facts (Doc. 23) are deemed admitted as Cabello failed to file a counter-statement as required by M.D. Local Rule 56.1.

-2-

After being convicted of Burglary and Escape, David Cabello was in the custody of the Pennsylvania Department of Corrections (DOC) between 2004 and 2010. (Doc. 23, Def.'s Statement of Material Facts (DSMF) ¶ 1). At all times relevant to this action, Chad Loop, the sole named defendant in this action, was a correctional officer at SCI-Huntingdon. (*Id*. ¶ 2).

On July 15, 2008, Cabello filed a lawsuit, *Cabello v Grace*, No. 1:08-CV-1334 (M.D. Pa.), alleging that SCI-Huntingdon medical officials had improperly prescribed his diabetes medication. The action related solely to his medical care. (*Id*. ¶ 3). CO Loop was not named as defendant nor mentioned in the original complaint filed in that action. (*Id*. ¶ 4). On September 15, 2008, Cabello signed and dated an Amended Complaint in *Cabello v. Grace*, *supra.* (*Id*. ¶ 5). The Amended Complaint was docketed by this court on September 19, 2008, and alleged that CO Loop issued Cabello a retaliatory misconduct in 2006. (*Id*. ¶¶ 6-7). CO Loop was never added as a defendant in that action because Cabello "couldn't really prove that it was retaliation." (*Id*. ¶¶ 8-9; Doc. 25-1 at p. 20).[3] Cabello never spoke to CO Loop about the lawsuit and does not know how or when he learned his name was mentioned in it. (DSMF at ¶10).

On September 20, 2008, Cabello was on cell restrictions as a result of his receipt of an institutional misconduct. (*Id*. ¶¶ 11-12). The DOC's Inmate Disciplinary Policy, DC-ADM 801, defines "cell restrictions" as "total confinement to general population

---

[3] Unless otherwise noted, all citations to the record are to the docket number and page number assigned by the Electronic Case Filing system (ECF) rather than the page number of the original document.

cell, dorm area or cubicle, except for meals, showers, one formal religious service per week, commissary, law library and one one-hour specified daily exercise period." (*Id*. ¶ 12). An inmate on cell restrictions is permitted to leave their cells for meals, and are given enough time to eat and get back to their cells. (*Id*. ¶ 13).

On September 20, 2008, while on cell restrictions, Plaintiff went to breakfast. (*Id*. ¶ 14). After breakfast, Cabello did not return directly to his cell but approached CO Kellichner (a non-defendant) and proceeded to argue his case regarding his access to the law library while on cell restrictions. (*Id*. ¶ 15). SCI-Huntingdon inmates on cell restriction are permitted to use the law library, but only on "block night," which is the one designated night per seek that inmates housed on their prison block are provided access to the law library. (*Id*. ¶ 16). Inmates on cell restriction may also request additional law library privileges by obtaining the express written permission from the law librarian. (*Id*. ¶ 17). Cabello demanded to go to the law library at a time he was not authorized to do so. (*Id*. ¶ 18).

On September 20, 2008, CO Loop issued Cabello Misconduct B075051 for Breaking Cell restrictions, using abusive language, and refusing to obey an order. (*Id*. ¶19). The misconduct accuses Cabello of telling CO Kellichner "Fuck you motherfucker, send me to the whole, I only go 20 months to max anyway," refusing an order by CO Loop to "take it in his cell," loitering while on cell restriction, and for refusing an order to pack his cell. (*Id*.) CO Loop was unaware that Cabello had mentioned his name in the September 15, 2008, Amended Complaint in *Cabello v. Grace*, *supra*, when he issued Cabello misconduct B075051. (*Id*. ¶ 5 and ¶ 20). CO Loop received a copy of the Amended

-4-

Complaint in *Cabello v. Grace*, *supra*, from prison officials sometime after issuing Cabello misconduct B075051.  (*Id*. ¶ 21).

Cabello received a misconduct hearing on B075051 on September 23, 2008. (*Id*. ¶ 23).  In his inmate version, Cabello wrote that upon returning from breakfast he first went back to his cell to get a copy of a department policy and then left to argue with CO Kellichner.  (*Id*. ¶ 24).  Cabello pled guilty to breaking cell restrictions, but not guilty to the other charges.  (*Id*. ¶ 25).  The Hearing Examiner found Cabello guilty of all charges after noting that inmates on cell restriction may use the law library on block night only, and that Cabello's attempting to go to the library in the morning was contrary to the guidelines.  (*Id*. ¶ 26).  In his deposition, Cabello stated that the only reason he thought the September 20, 2008, misconduct was retaliatory was because CO Loop mentioned it on a February 3, 2010, misconduct (A878818).  (*Id*. ¶27).  If CO Loop had not noted the September 20, 2008, misconduct on the February 2010 misconduct, it would not have come to Cabello's mind that the 2008 misconduct was retaliatory.  (*Id*. ¶ 28).  Cabello stated in his deposition that he would have never filed the retaliation claim had it not been for that notation.  (*Id*.).

On February 3, 2010, Cabello was in the Restricted Housing Unit (RHU) waiting to see the Program Review Committee (PRC).  (*Id*. ¶ 29).  CO Loop was assigned to escort the PRC that day.  (*Id*. ¶ 30).  It was CO Loop's duty to inform Cabello that he was being released from the RHU into general population.  (*Id*. ¶ 31).  When CO Loop told Cabello that he was being released, Cabello looked at CO Loop and said "I will see you in pop."  (*Id*. ¶ 32).  Cabello admitted that he was being a "smart-aleck" and knew those words would "tick [CO Loop] off" and would annoy CO Loop.  (*Id*. ¶ 33).  CO Loop

construed Cabello's words as a threat.  (*Id*. ¶ 34).  CO Loop knew that every inmate is potentially dangerous, and that general population inmates have less restrictions and therefore greater opportunity to harm Correctional Officer.  (*Id*.).  CO Loop had cited Cabello with misconducts in the past and was concerned Cabello would retaliate against him while in general population.  (*Id*. ¶ 35).  In the past Cabello had incurred a misconduct for spitting on a corrections officer.  (*Id*. ¶ 36).

On February 3, 2010, after his interaction with Cabello, CO Loop wrote Cabello misconduct number A878818.  (*Id*. ¶ 37).  On the misconduct form, CO Loop accused Cabello of saying the words "I guess I will see you in pop" in a threatening manner.  (*Id*. ¶ 38).  In order to explain why he would take those words as a threat, CO Loop noted his negative history with Cabello on the misconduct report.  (*Id*. ¶ 39). Specifically, CO Loop noted that: (1) Cabello had been placed in the RHU due to a misconduct CO Loop had issued him in September 2008; (2) Cabello had sued him over the misconduct; and (3) Cabello had verbally threatened CO Loop on numerous occasions when he was assigned to the RHU.  (*Id*. ¶ 40).  Cabello was convicted of misconduct A878818 on February 12, 2010.  (*Id*. ¶ 41).  In explaining his reasoning, the Hearing Examiner noted that Cabello had a documented misconduct history of abusive language and threats against staff.  (*Id*.).  The Hearing Examiner also noted that there was absolutely no reason for Cabello to make any verbal comments at all to CO Loop after CO Loop delivered the news that he would be released to general population.  (*Id*.).

IV.   *Discussion*

An allegation that a prison official filed a false disciplinary charge in retaliation for filing a prison grievance states a claim for a violation of the First Amendment.  *See Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir. 2003) (retaliation "for filing complaints" violates the First Amendment) (citing with approval *Babcock v. White*, 102 F.3d 267, 275-76 (7th Cir. 1996) which stated that retaliation claim can be based on an inmate's lawsuits or prison grievances).

A plaintiff alleging retaliatory punishment bears the initial burden of showing that:  (1) he engaged in constitutionally protected activity; (2) he suffered "adverse action" at the hands of prison officials; and (3) his constitutionally protected activity was the substantial or motivating factor in the prison official's decision to discipline him.  *Mitchell*, 318 F.3d at 530 (citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)).  With respect to the required causal link, this final element may be established by evidence of a temporal proximity between the prisoner's protected activity and the defendant's adverse action.  However, the timing of the alleged retaliatory action must be suggestive of retaliatory motive.  *See Lauren W. ex. rel. Jean W. v. Deflaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (to show a causal connection, a plaintiff must prove "either (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.").  The mere fact that an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.  *See Lape v. Pennsylvania*, 157 F. App'x 491, 498 (3d Cir. 2005) (nonprecedential).  Only where the

facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997).

Once a plaintiff has made a *prima facie* case, the burden shifts to the defendant to prove by a preponderance of the evidence, that the plaintiff would have received the same punishment, or alternatively stated, that defendant would have taken the same action, absent the retaliatory motive for reasons related to a legitimate penological interest. *Rauser*, 241 F. 3d at 334.

When there is a finding of guilt in a prison disciplinary proceeding, a prisoner cannot prevail on a claim that the person issuing the misconduct issued a false misconduct if the disciplinary sanction imposed is supported by some evidence. *See Alexander v. Fritch*, 396 F. App'x 867, 874 (3d Cir. 2010) (nonprecedential) (holding that "because there was evidence to support the hearing examiner's finding of guilty, there was a legitimate penological reason for the charge and punishment"); *Carter*, 292 F.3d at 149 (even if prison officials were motivated by animus toward jailhouse lawyers, there was sufficient evidence of the plaintiff's misconduct offenses to conclude that the misconducts would have issued not withstanding his jailhouse lawyering).  Finally, when analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prisoner officials require deference, particularly where prison security is concerned. *Rauser*, 241 F.3d at 334.

In order for his retaliation claim to proceed, Cabello must provide evidence of a causal link between his constitutionally protected conduct (the filing of *Cabello v. Grace*,

*supra*) and the adverse actions (the misconducts).  As to the September 2008 misconduct, at first blush, the fact that CO Loop issued that misconduct on September 20, 2008, just five days after Cabello filed his Amended Complaint in *Cabello v. Grace, supra*, mentioning CO Loop would suggest a causal link between the lawsuit and the September 2008 misconduct.  While relevant, this temporal proximity is not dispositive as to causation in a retaliation case.  *Rauser*, 241 F.3d at 334.  Here the timing of the Amended Complaint and the first misconduct is coincidental at best as both parties agree that CO Loop was not aware that Cabello had mentioned him in his Amended Complaint when Loop issued this misconduct.  Thus, Cabello has not carried his burden to demonstrate that the protected conduct he was engaged in, the filing of his first lawsuit, was a motivating factor in CO Loop's decision to issue him a misconduct in September 2008.

Further, it is undisputed that Cabello pled guilty to at least one of the many charges set forth in the September 2008 misconduct.  Specifically, Cabello pled guilty to breaking cell restrictions as charged by CO Loop.  As for the remaining charges, the Hearing Examiner found the abusive statement CO Loop attributed to Cabello was corroborated by Cabello's actual maximum sentence release date.  This undisputed record, showing there was "some evidence" to support the hearing examiner's finding of guilty, defeats Cabello's retaliation claim.  *See Grunthal v. Tempus*, No. 09-CV-1338, 2010 WL 4639049, at *7 (W.D. Pa. Nov. 8, 2010) ("Although Plaintiff disagrees with the factual findings of the hearing examiner, they were upheld after pursuing all levels of review.  Thus, Defendants have established that the same action would have been taken in the absence of any protected activity for reasons related to the legitimate penological goal of maintaining order in the institution.")

-9-

Next, we turn to the February 3, 2010, misconduct. Cabello's speculative statement that the only possible reason for his receipt of the February 2010 misconduct is a retaliatory one is not supported by the record. First, the court agrees with Defendant that the approximate sixteen-month temporal gap between the filing of the Amended Complaint in *Cabello v. Grace*, supra, and this second misconduct, is too remote to warrant a finding of a causal connection based on temporal proximity. *See Krouse*, 126 F.3d at 503 (finding a period of nineteen months to be insufficiently suggestive of retaliatory motive). We recognize Plaintiff need not show temporal proximity, that evidence of causation may be any evidence "gleaned from the record as a whole from which causation can be inferred," *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 281 (3d Cir. 2000), but there is no evidence in the record to support Plaintiff's claim.

To the contrary, statements made during his deposition confirm the speculative nature of this claim. Cabello stated that but for CO Loop's mentioning of the September 2008 misconduct in the issuance of the second one, he "wouldn't have said this is retaliation." (*See* Doc. 25-1 at p. 32). Also, Cabello affirms that he did not have any problems with CO Loop after the September 2008 misconduct until the February 2010 misconduct because he "[never saw [CO Loop]". (*Id*.).

Additionally, even if we assume that the filing of the lawsuit is suggestive of a causal link, CO Loop has demonstrated by a preponderance of the evidence, that he would have issued Cabello the February 2010 misconduct anyway, as it was reasonably related to legitimate penological interests. After CO Loop told Cabello that he was to be released from the RHU, Cabello admits he was a "smart aleck," seeking to "tick off" and annoy CO Loop, when he said he would "see [him] in pop." CO Loop was not annoyed, but took

-10-

Cabello's statement as a threat.  CO Loop made the serious charge that Plaintiff had threatened him with the prior lawsuit and the 2008 misconduct in mind, as mentioned in the misconduct.[4]  The evidence of record establishes that CO Loop's rationale for perceiving Cabello's "smart aleck" remark as a threat in this setting demonstrates that he would have made the same decision to issue the misconduct for reasons related to a legitimate penological interest.  Consequently, CO Loop is entitled to summary judgment on this claim.

        We will issue an appropriate order.

                                        /s/ William W. Caldwell
                                        William W. Caldwell
                                        United States District Judge

Date:  August 6, 2012

---

[4] The fact that CO Loop erroneously believed he was named in the other lawsuit because of the 2008 misconduct he issued Cabello rather than the 2006 misconduct he issued is irrelevant. CO Loop's reasoning for issuing the February 2010 misconduct based on his the perceived threat is still sound.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID CABELLO,　　　　　　　　　　:
　　　Plaintiff　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　: CIVIL NO. 1:10-CV-700
　　v.　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　: (Judge Caldwell)
OFFICER LOOP,　　　　　　　　　　　:
　　　Defendant　　　　　　　　　　　　:

*O R D E R*

AND NOW, this 6th day of August, 2012, for the reasons set forth in the accompanying memorandum, it is ORDERED that:

　　1. Defendant CO Loop's Motion for Summary Judgment (Doc. 22) is granted.

　　2. The Clerk of Court is directed to enter judgment in favor of Defendant CO Loop and against Plaintiff, David Cabello.

　　3. The Clerk of Court shall close this file.

　　　　　　　　　　　　　　　　　　　　　　/s/ William W. Caldwell
　　　　　　　　　　　　　　　　　　　　　William W. Caldwell
　　　　　　　　　　　　　　　　　　　　　United States District Judge